UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

CIVIL ACTION NO: 5:22-CV-351

MAIDPRO FRANCHISE, LLC

  Plaintiff,

v.

**CIVIL COMPLAINT**
**(Jury Trial Demanded)**

TRIANGLE MAID PRO, LLC,
ARTHUR HARRELL, MUNIRAH HARRELL

  Defendants.

## COMPLAINT

Plaintiff MaidPro Franchise, LLC ("Plaintiff" or "MaidPro"), for its Complaint against Defendants Triangle Maid Pro, LLC, ("Triangle"), Arthur Harrell ("Mr. Harrell"), and Munirah Harrell ("Mrs. Harrell") (collectively "Defendants"), hereby alleges as follows:

### I. NATURE OF THE ACTION

1. This is a classic case of trademark infringement and unfair competition. In short, Defendants purposefully established and operated a copy-cat, knock off "Maid Pro" house cleaning business of the same type developed, being offered as a franchise, and otherwise operated by MaidPro and its authorized franchisees.

2. As described hereafter, Defendants' conduct violates a long list of rights enjoyed by MaidPro. At the core of Defendants' unlawful conduct, however, is that Defendants: (i) are intentionally infringing on Plaintiff's registered service marks; (ii) are using a domain name (www.trianglemaidpro.com), and (iii) are using the name Triangle MaidCo and associated domain name www.trianglemaidco.com in bad faith with the intent to trade on and appropriate

the reputation and goodwill that Plaintiff has built up in the MAIDPRO marks, and to divert customers and revenues from Plaintiff and its franchisee MaidPro of the Triangle. Defendants commit these acts for the purpose of selling substantially similar services, for their own profit, in direct competition with MaidPro and to MaidPro's detriment. Defendants seek to steal MaidPro's actual and prospective customer and franchise relationships and goodwill and unfairly and unlawfully deprive MaidPro of the significant market opportunities for which MaidPro has invested thousands of dollars to foster and develop.

3. MaidPro seeks damages and, where such damages are inadequate to redress the harm to MaidPro, injunctive and other relief against Defendants in order to halt the blatant violations of common and federal trademark law, and to halt the illegal activity and deception that Defendants have launched and are implementing against MaidPro and the consuming public.

4. This is an action arising under the trademark laws of the United States, 15 U.S.C. §§1051 et seq. (the "Lanham Act") for trademark infringement, in violation of 15 U.S.C. § 1114(1); for false designation of origin, in violation of 15 U.S.C. § 1125(a); and for violation of the Anticybersquatting Consumer Protection Act set forth in 15 U.S.C. § 1125(d). This is also an action for trademark infringement, unfair and deceptive trade practices, and unfair competition under the common law of the State of North Carolina.

## II. THE PARTIES

5. Plaintiff MaidPro Franchise, LLC ("Plaintiff" or "MaidPro"), is a Delaware corporation with an address at 77 North Washington Street, Boston, Massachusetts 02114.

6. Defendant, Triangle Maid Pro, LLC ("Triangle"), is a North Carolina corporation whose registered agent is located, upon information and belief, at 8480 Honeycutt Road, Suite 200 #V295, Raleigh, NC 27615.

7. Defendant Arthur Harrell is one of the owners of Triangle and, upon information and belief, is a resident of the state North Carolina.

8. Defendant Munirah Harrell is one of the owners of Triangle and, upon information and belief, is a resident of the state of North Carolina.

### III. JURISDICTION AND VENUE

9. The jurisdiction of this Court with respect to the claims set forth herein arises under the Trademark Laws of the United States, as set forth in Title 15 of the United States Code. This Court has jurisdiction under Section 39 of the Lanham Act (15 U.S.C. § 1121) and pursuant to 28 U.S.C. § 1338(a) and (b). This Court also has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332, as the matter in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000) and arises between a citizen of this state and a citizen of another state. This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367(a), and under the principles of pendent jurisdiction.

10. Defendants are subject to general personal jurisdiction in this judicial district insofar as the causes of action herein arise out of activities of Defendants in the offering of services in this State, the delivering of such services in this State, and tortious conduct occurring in this State. Further, because Defendants are residents of this state and, in the case of Triangle, are headquartered here, they are subject to the general jurisdiction of this court.

11. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(a).

### III. BACKGROUND

12. MaidPro is engaged in the business of, among other things, franchising third-parties to own and operate MAIDPRO premium house cleaning and maid services. In those instances where the operation of a MAIDPRO house cleaning business is franchised, the

obligations and duties of the franchisee are subject to and governed by the terms of written "Franchise Agreements."

13. MaidPro is the sole and exclusive owner of all proprietary and property rights and interests in and to the MAIDPRO franchise system, which includes trade names, trademarks, service marks, trade secrets, and other proprietary rights used in connection with the operation of MAIDPRO house cleaning businesses. At present, the MAIDPRO franchise system comprises of over 250 house cleaning businesses throughout the United States and Canada, including a franchise operating in the Raleigh, North Carolina area using the name "MaidPro of the Triangle."

14. Through years of continuous promotion and use of the MAIDPRO name and marks in association with the development of the MAIDPRO franchise system, MAIDPRO has become a distinctive mark identifying the services provided by franchised MAIDPRO house cleaning businesses.

15. In recognition of the distinctive character of the MAIDPRO mark, the United States Patent and Trademark Office has granted United States Trademark Registration Nos. 3487518 and 4267920 for the MAIDPRO mark, with and without Design.

16. U. S. Trademark Registration Nos. 3487518 and 4267920 for the MAIDPRO marks, with and without Design, are in full force and effect and are incontestable within contemplation of Section 15 of the Lanham Act. MaidPro is the owner of the above-referenced marks, the registrations therefore, and the good will associated therewith.

17. Each registration set forth above is prima facie evidence of the validity of the registration, of MaidPro's ownership of the marks, and of MaidPro's exclusive right to use those marks in commerce on the types of services identified above, as provided in 15 U.S.C. §§

1057(b) and § 1115(a). Such registrations are further constructive notice of MaidPro's claim of ownership of the marks listed above pursuant to 15 U.S.C. § 1072.

18. MaidPro has expended considerable time, money, and effort in developing, advertising and promoting the MAIDPRO franchise system in connection with the MAIDPRO marks. MaidPro has made such an investment to cause consumers to recognize the MAIDPRO marks as distinctly designating MAIDPRO house cleaning businesses as originating and otherwise being affiliated with MaidPro, all in order to further develop and trade upon the goodwill associated with the MAIDPRO marks.

19. The MAIDPRO marks have long since acquired secondary meaning in the mind of the public who equate the marks with the MAIDPRO franchise system and MaidPro.

20. Each franchisee of the MAIDPRO franchise system is granted a non-exclusive, limited license from MaidPro to use the MAIDPRO marks and to operate under MaidPro's proprietary business system, utilizing distinctive and confidential methods of conducting business, identification schemes, services, management programs, standards, specifications, proprietary marks and trade secret information.

21. As set forth above, the relationship between MaidPro and its franchisees is governed by the terms and conditions of the Franchise Agreement entered into between MaidPro and each franchisee.

22. MaidPro plans to continue to expand the MAIDPRO franchise system throughout the United States, including expanding its operations in North Carolina.

23. MaidPro conducts business activities over the Internet, through its website, www.maidpro.com, where it connects customers to franchisees in their area, and also through social media sites like Facebook and Instagram.

24. MaidPro's franchisee MaidPro of the Triangle services Apex, Carrboro, Cary, Chapel Hill, Durham, Garner, Holly Springs, Morrisville, Pittsboro, and Raleigh, North Carolina. MaidPro of the Triangle has a webpage on MaidPro's website: www.maidpro.com/triangle/.

25. The heart of Defendants' wrongful conduct is the establishment and operation of a copy-cat, knock-off house cleaning businesses offering the same types of services offered by MaidPro and its authorized franchisees under the name "Triangle Maid Pro" using the dominant elements of the service marks created and owned by MaidPro.

26. Defendant, Triangle Maid Pro, LLC was formed in 2021 and conducts business activities over the Internet, through its website, www.trianglemaidpro.com, from which it advertises and offers for sale its own house cleaning and maid services in Chapel Hill, Durham, and Raleigh, North Carolina and the surrounding area – the "Triangle area" of North Carolina.

26. Until September 1, 2022, Defendants maintained a Facebook page advertising and offering for sale its house cleaning services, www.facebook.com/trianglemaidpro. The Facebook page directed users to www.trianglemaidpro.com.

27. Until September 1, 2022, Defendants also maintained an Instagram account advertising and offering for sale its house cleaning services, www.instagram.com/trianglemaidpro. The Instagram page directed users to www.trianglemaidpro.com.

29. Until September 1, 2022, Defendants advertised and offered for sale its house cleaning services on Yelp at www.yelp.com/biz/triangle-maid-pro-durham. The Yelp page directed users to www.trianglemaidpro.com.

30. Until September 1, 2022, Defendants advertised and offered for sale its house cleaning services on Thumbtack at https://www.thumbtack.com/nc/durham/house-

cleaning/triangle-maid-pro/service/435338636075417608. The Thumbtack page linked users to Defendants' Facebook and Instagram pages.

31. On or about August 2022, notwithstanding MaidPro's and its authorized franchisees' continuous and exclusive use and promotion of the MAIDPRO marks, MaidPro discovered that Defendants were advertising and offering for sale on its website and Facebook, Instagram, Yelp, and Thumbtack pages, its house cleaning and maid services using the mark or name "Triangle Maid Pro." On its website and each of these social media platforms, Defendants' logo appeared as:



32. Upon information and belief, Defendants were also using the mark or name "Triangle Maid Pro" in all of its other public-facing documents, including those distributed to consumers in connection with services rendered.

33. Further, its website solicited individuals to contact it using the following email address: support@trianglemaidpro.com.

34. Defendants are not an authorized franchisee, or otherwise related to, MaidPro in any manner whatsoever and are not now, and have never been, authorized to use the MAIDPRO mark.

35. Defendants' use of the mark or name "Triangle Maid Pro" enables Defendants to trade upon and utilize the goodwill established by MaidPro and its franchisees in the MAIDPRO Mark.

36. Defendants' use of the mark or name "Triangle Maid Pro" has and will cause consumers to mistakenly assume that there is some association, approval, sponsorship, affiliation, or other relationship between the services of Defendants and MaidPro's franchisee, MaidPro of the Triangle, when there is not. Indeed, there is no need to theorize about the potential for consumer confusion; MaidPro of the Triangle has received complaints from consumers who received services from Defendants and mistakenly believed they had dealt with MaidPro of the Triangle.

37. MaidPro notified Defendants of their unauthorized use of the MAIDPRO marks prior to the filing of this action. Defendants are, therefore, fully aware of the intellectual property rights of MaidPro and have acted and continue to act in reckless disregard of those rights.

38. On August 1, 2022, counsel for MaidPro sent a letter to Defendants demanding that they immediately and permanently cease all use of the MAIDPRO marks, and to modify their website to eliminate the offending use of the "MaidPro" designation by no later than August 18, 2022. Attached hereto as **Exhibit A** is a true and accurate copy of the August 1, 2022 letter.

39. On August 18, 2022, counsel for Defendants contacted counsel for MaidPro and confirmed confirmation of the letter. advised that Defendants would change their name, but it would take some time for its members to think of a new name and rebrand. Counsel for MaidPro demanded that Defendant remove references to the MAIDPRO marks on its website, social media pages, and other public-facing materials or take down the website, pages, and materials in their entirety by August 29, 2022.

40. On August 26, 2022, counsel for Defendants advised that Defendants were "working on selecting a new name" and "looking into purchasing a domain and starting work on

the website overhaul/transfer." On August 26, 2022 and again on August 27, 2022, counsel for MaidPro demanded that Defendants cease using the MAIDPRO marks and remove them from their website, social media pages, and other public-facing materials by August 29, 2022.

      41.      On August 29, 2022, Defendants posted the below disclaimer on its website:



Counsel for Defendants advised counsel for MaidPro that the disclaimer, buried at the very bottom of the infringing website, "should temporarily aid in avoiding confusion." Counsel for MaidPro indicated that this solution was unacceptable as Defendants were continuing to use the name or mark "Triangle Maid Pro." Counsel for MaidPro noted that if Defendants were able to change their website to add the disclaimer, they should have been able to remove references to the MAIDPRO marks appearing on the same.

      42.      On August 30, 2022, Defendants posted the below logo on their website:



43. However, on September 1, 2022, Defendants changed their logo yet again, this time to say Triangle MaidCo.



44. Further, Defendants updated their Facebook, Instagram, Thumbtack, and website pages to now reference the name Triangle MaidCo and to link to www.trianglemaidco.com. However, a review of their Facebook and Instagram pages contains a number of older posts still referring to themselves as Triangle MaidPro or referencing www.trianglemaidpro.com.

45. However, as of September 2, 2022, the website www.trianglemaidpro.com remains accessible, bears the logo Triangle MaidCo, and directs individuals to contact the company using an @trianglemaidpro.com address.

46. While Defendants have nominally changed the name of the business, the clear intent is to continue to trade off the MaidPro name by (1) keeping www.trianglemaidpro.com active and (2) switching to a name that looks and sounds nearly identical to that of MaidPro. MaidPro notified Defendants of the problematic nature of the use of the name MaidCo. and demanded it be removed by the close of business on September 2, 2022.

47. To date, and despite due demand, MaidPro has not received a satisfactory response from Defendants regarding their copy-cat, knock-off house cleaning business, which would include an expressed intention to cease and desist from any further unlawful conduct.

48. Defendants continues to operate its website with the infringing mark or name, www.trianglemaidpro.com, use an @trianglemaidpro.com address, have the legal name Triangle Maid Pro LLC, and use a confusingly similar name "Triangle Maid Co." throughout the internet.

Indeed, Defendants' intent to confuse consumers is seen from abandoning a non-confusing name "Triangle Premier Maids" to return to a confusing name "Triangle Maid Co". Indeed, Defendants are, and have been, willfully infringing MaidPro's federally registered marks.

## COUNT I

## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))

49. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 48 as if fully set forth in this Count I.

50. Defendants, without Plaintiff's consent, have used and are using in interstate commerce a mark or name, "MAIDPRO," in connection with the sale, offering for sale, and advertising of services which, because of their confusing similarity to Plaintiff's MAIDPRO marks and, inter alia, the fact that the identical kind of services are offered and sold under the MAIDPRO name and the fact that such services are offered and sold in the same channels of trade and to the same types of consumers as the services sold under the Plaintiff's MAIDPRO mark, is likely to cause confusion or mistake among consumers, or to deceive consumers, as to the source of such services, in violation of 15 U.S.C. §1114(1).

51. Upon information and belief, the adoption and use by Defendants of the mark or name MAIDPRO and the confusingly similar name "MaidCo" in connection with their commercial activities was in bad faith and in willful disregard of Plaintiff's rights, with intent to trade on and appropriate the reputation and goodwill which Plaintiff has built up in the MAIDPRO mark, and to divert customers and revenues from Plaintiff.

52. The aforementioned actions and activities of Defendants have caused and will continue to cause damage and irreparable harm and injury to Plaintiff unless and until such time as they are enjoined by this Court.

## COUNT II

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

53. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 48 as if fully set forth in this Count II.

54. Defendants, without Plaintiff's consent, have used and are using the mark or name MAIDPRO and the confusingly similar name "MaidCo" in commerce in connection with services that are confusingly similar to Plaintiff's services, such that Defendants' use is likely to cause confusion, or cause mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' commercial activities with Plaintiff, in violation of 15 U.S.C. §1125(a).

55. Upon information and belief, the adoption and use by Defendants of the mark or name MAIDPRO and the confusingly similar name "MaidCo" in connection with its commercial activities was in bad faith and in willful disregard of Plaintiff's rights, with intent to trade on and appropriate the reputation and goodwill that Plaintiff has built up in the MAIDPRO mark, and to divert customers and revenues from Plaintiff.

56. The aforementioned actions and activities of Defendants have caused and will continue to cause damage and irreparable harm and injury to Plaintiff unless and until such time as they are enjoined by this Court.

## COUNT III

## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

## (15 U.S.C. § 1125(d))

57. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 48 as if fully set forth in this Count III.

58. Upon information and belief, Defendants registered the domain name www.trianglemaidpro.com in 2021 in connection with its house cleaning business. It currently uses the same to advertise and sell its house cleaning and maid services in Chapel Hill, Durham, and Raleigh, North Carolina and the surrounding area – the "Triangle area" of North Carolina. It also has recently begun using a confusingly similar name www.trianglemaidco.com to advertise its business.

59. As pleaded above, Plaintiff is the owner of incontestable federal registrations for the MAIDPRO mark, which mark is entitled to protection.

60. Plaintiff's MAIDPRO mark was distinctive at the time Defendants registered the trianglemaidpro.com and trianglemaidco.com domain names.

61. The domain names www.trianglemaidpro.com and www.trianglemaidco.com are confusingly similar to and dilutive of the MAIDPRO mark, which has been registered and widely used since 2008, and the domain name www.maidpro.com registered and used by Plaintiff and its franchisees.

62. Upon information and belief, the registration and use by Defendants of the domain name www.trianglemaidpro.com and www.trianglemaidco.com was done in bad faith and in willful disregard of Plaintiff's rights, and with malicious intent to trade on and appropriate the reputation and goodwill that Plaintiff has built up in the MAIDPRO mark, and to divert customers and revenues from Plaintiff and its franchisee MaidPro of the Triangle.

## COUNT IV

## COMMON LAW TRADEMARK INFRINGEMENT

63. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 62 as if fully set forth in this Count IV.

63. Defendants have engaged and are continuing to engage in acts of trademark infringement in violation of the common law of the State of North Carolina.

64. Upon information and belief, the adoption and use by Defendants of the mark or name MAIDPRO and the confusingly similar name "MaidCo" in connection with their commercial activities was in bad faith and in willful disregard of Plaintiff's rights, with intent to trade on and appropriate the reputation and goodwill that Plaintiff has built up in the MAIDPRO mark, and to divert customers and revenues from Plaintiff.

65. The foregoing acts of trademark infringement by Defendants have damaged Plaintiff in an amount that is unknown and cannot at the present time be ascertained, and in a manner that cannot be redressed adequately with an award of monetary damages.

66. Plaintiff has no adequate remedy at law. The aforementioned actions and activities of Defendants have caused and will continue to cause damage and irreparable harm and injury to Plaintiff unless and until such time as they are enjoined by this Court.

## COUNT V

## COMMON LAW UNFAIR COMPETITION

67. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 67 as if fully set forth in this Count V.

68. The aforementioned activities of Defendants constitute unfair competition, including but not limited to the unlawful passing off of their services as those of Plaintiff, in violation of the common law of the State of North Carolina.

69. Upon information and belief, the adoption and use by Defendants of the mark or name MAIDPRO or the confusingly similar name "MaidCo" in connection with their commercial activities was in bad faith and in willful disregard of Plaintiff's rights, with intent to

trade on and appropriate the reputation and goodwill that Plaintiff has built up in the MAIDPRO mark, and to divert customers and revenues from Plaintiff.

70. As a result of Defendants' unfair methods of competition and unfair and/or deceptive acts and practices, Plaintiff has been damaged in an amount that is presently unknown and cannot be ascertained at the present time.

71. Plaintiff has no adequate remedy at law. The aforementioned actions and activities of Defendants have caused and will continue to cause damage and irreparable harm and injury to Plaintiff unless and until such time as they are enjoined by this Court.

## COUNT VI

## VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (UDTPA), N.C. Gen. Stat. § 75-1.1

72. Plaintiff repeats and re-alleges the allegations set forth in Paragraphs 1 through 71 as if fully set forth in this Count VI.

73. Plaintiff is entitled to bring an action under the UDTPA pursuant to N.C. Gen. Stat. § 75-16.

74. At all relevant times, Defendants were acting in the conduct of trade or commerce within the meaning of the UDTPA.

75. Defendants violated the UDTPA by (i) intentionally infringing on Plaintiff's registered service marks; (ii) using the domain name www.trianglemaidpro.com in bad faith and with the intent to trade on and appropriate the reputation and goodwill that Plaintiff has built up in the MAIDPRO marks, and to divert customers and revenues from Plaintiff and its franchisee MaidPro of the Triangle, and (iii) using the name Triangle MaidCo and associated domain name www.trianglemaidco.com in bad faith with the intent to trade on and appropriate the reputation

and goodwill that Plaintiff has built up in the MAIDPRO marks, and to divert customers and revenues from Plaintiff and its franchisee.

76. Defendants' conduct is unfair and offends public policy as it has been established by federal and state statutes, as well as North Carolina common law and general notions of fairness.

77. The conduct described in the preceding paragraphs is immoral, unethical, oppressive, and unscrupulous.

78. The conduct described in the preceding paragraphs caused substantial injury to Plaintiff, that injury could not have been reasonably avoided, and the benefits of that conduct to competition or consumers does not outweigh the harm caused by the conduct.

79. Further, Defendants' conduct as alleged in this complaint constitutes intentional and wanton violation of Plaintiff's rights and/or was done with reckless indifference to those rights.

80. As a direct and proximate result of Defendants' unfair business practices, Plaintiff has suffered ascertainable and substantial losses constituting injury within the meaning of N.C. Gen. Stat. § 75-16. Plaintiff is entitled to treble damages and attorney's fees pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1. Further, Plaintiff is entitled to injunctive relief to prevent the unlawful conduct set forth herein.

**REQUEST FOR RELIEF**

WHEREFORE, as relief, Plaintiff prays that:

1. Defendants, its owners, members, officers, agents, servants, employees, attorneys, and all others in active concert or participation with them be preliminarily and permanently enjoined and restrained from (1) using the MAIDPRO marks (including, using any and all signs, domain names, websites, printed goods, advertising, or electronic communications or solicitations bearing such name and mark) and/or any other designations or indicia, such as the

name "MaidCo", that are likely to cause confusion, mistake, or deception with respect to either the source or origin of Defendants' services or Plaintiff's rights and the rights of its authorized franchisees in the MAIDPRO mark; and (2) otherwise infringing upon the MAIDPRO mark, and competing unfairly with Plaintiff and its authorized franchisees.

2. Defendants be ordered to transfer immediately any remaining interest they hold in any website or listing that features or displays the MAIDPRO mark, or any other confusingly similar website or listing, to Plaintiff pursuant to 15 U.S.C. § 1125(d).

3. Defendants be ordered to cancel or change immediately any corporate or fictitious name registrations that contain or feature, in whole or in part the MAIDPRO marks and/or any other designations or indicia that are likely to cause confusion, mistake, or deception including the MAIDPRO mark, including the "MaidCo" designation.

4. Defendants account for and pay to Plaintiff such damages, together with pre-judgment and post-judgment interest thereon, as Plaintiff has sustained as a consequence of Defendants' infringement upon the MAIDPRO mark, and account for and return to Plaintiff any money, profits, and other advantages wrongfully gained by Defendants through its acts of infringement and other misconduct.

5. Defendants account for and pay to Plaintiff such damages arising from Defendants' violations of 15 U.S.C. § 1125(a), and any applicable common law and statutory laws of unfair competition.

6. Plaintiff be awarded treble damages due to Defendants' willful infringement and other acts of deliberate misconduct pursuant to 15 U.S.C. § 1117.

7. Plaintiff be awarded its reasonable attorney's fees, costs, interest, and other expenses pursuant to 15 U.S.C. § 1117 and any other applicable statutory or common law provision.

8. Plaintiff be awarded damages for injury to its goodwill and reputation caused by Defendants.

9. Defendants be ordered to post in a publication approved by Plaintiff an advertisement acknowledging ownership by Plaintiff of the MAIDPRO mark, and/or issue a retraction or apology by other such means as approved by Plaintiff.

10. Plaintiff be awarded such other and further relief as this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury of all issues so triable.

Respectfully submitted this 2nd day of September, 2022.

/s/ *Stephen V. Carey*
Stephen V. Carey
N.C. State Bar No. 52791
Catherine G. Clodfelter
N.C. State Bar No. 47653
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27601
Telephone: (919) 835-4011
Facsimile: (919) 834-4564
Email: stevecarey@parkerpoe.com
catherineclodfelter@parkerpoe.com

John M. Doroghazi (Notice of Special Appearance to be filed)
WIGGIN AND DANA LLP
265 Church Street
P.O. Box 1832
New Haven, CT 06510
Telephone: 203-498-4400
Facsimile: 203-782-2889
Email: jdoroghazi@wiggin.com

*Counsel for Plaintiff MaidPro Franchise, LLC*